James W. COTHRAN *v.* STATE of Arkansas

CR 87-21 725 S.W.2d 548

Supreme Court of Arkansas
Opinion delivered March 9, 1987

*James W. Haddock*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. James Cothran appeals from a conviction for driving while intoxicated. On August 22, 1985 Cothran drove an 18-wheeler into the Fairview Weight Station near Lake Village, Arkansas and entered the office to pay the fuel tax. Officer Sledge of the Arkansas Highway Police, Weights and Scales Division, said he smelled alcohol when Cothran spoke to him. After observing Cothran's walk, slurred speech, odor and mannerisms, he charged him with driving while intoxicated. At the jail Cothran was given a breathalyzer test and his blood

alcohol content registered .16%. At trial Cothran objected to the introduction of the breathalyzer test because the machine did not have a visual digital readout. He renews the argument on appeal.

Cothran relies on Act 533 of 1985 (Ark. Stat. Ann. § 75-1046 [Supp. 1985]), which provides that all instruments used to determine intoxication shall be equipped with visual digital display and automatic readout in order for the results to be admissible in any criminal or civil proceeding. Since the machine in this case, referred to as a type 900A, was not equipped with a digital readout, Cothran submits the test result was not admissible against him. We disagree.

Appellant's argument completely ignores the provisions of Section 3 which defers compliance under the act:

> All law enforcement agencies which conduct blood alcohol testing shall be in full compliance with the provisions of this act within four years after the effective date.

In construing Act 533 we strive to determine the legislative intent. *Steele* v. *Murphy, Trustee*, 279 Ark. 235, 650 S.W.2d 573 (1983). We think it clear beyond any reasonable argument that the legislature intended to provide a time lag between the effective date of the act (June 28, 1985) and full compliance. Two reasons are plain: to allow law enforcement agencies throughout the state time to convert from machines currently in use to machines capable of digital display and automatic readout, given whatever expense and acquisition problems might accompany that conversion, and second, and equally important, to allow for the adoption of essential rules and regulations by the State Board of Health to carry out the purposes of the act. Section 2 expressly addresses this aspect of the act's scope. It reads:

> The State Board of Health is authorized to adopt appropriate rules and regulations to carry out the intent and purposes of this Act, and only machines or instruments approved by the Board as meeting the requirements of this Act and regulations of the Board shall be used for making such breath analysis for determining blood alcohol content. The State Department of Health is hereby specifically authorized to limit by its rules the types (models) of testing devices which may be approved for use in Arkansas

for the purposes set forth in this Act. The approved types (models) will be specified by manufacturer's name and model number.

 The primary rule of statutory construction is to give effect to the perceived intent of the legislature, drawn from the entire act, in a manner consistent with common sense and the avoidance of absurd consequences resulting from too literal an interpretation. *Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985); *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985); *Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980). The result reached in this case is, we believe, consistent with those principles, as any other interpretation would effectively vitiate Section 3 of the act.

Affirmed.

PURTLE, J., and DUDLEY, J., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The act at issue went into effect on June 28, 1985. The first section of the act, § 75-1046.1, provides that every machine which performs a breath analysis of blood alcohol content must do so automatically, without adjustment by some operator, and the result of the analysis must be shown by a visible digital display on the machine and also by an automatic readout. Obviously, the legislature was concerned about injustices which might have occurred or could occur by an "adjustment" to a breath analysis machine or by concealed results. In order to prevent any more injustices the legislature enacted an exclusionary rule for court proceedings which provides that "any such breath analysis made by . . . a machine . . . that *does not* conform [to the new standards] . . . *shall be inadmissible in any criminal or civil proceeding.*" (Emphasis added.) The statute is written in present tense and mandatory terms. The exclusionary rule does not contain any language, or even the slightest suggestion, that it is not applicable in court proceedings for four years. The majority opinion simply ignores the present tense and mandatory language of the statute and, by use of rules of statutory construction, holds that the exclusionary rule is not effective until 1989. The majority opinion accomplishes this feat by relying upon a part of the act which is applicable to law enforcement agencies, § 75-1046.3, as distin-

guished from the part applicable to courts, § 75-1046.1. Contrary to common sense, the majority implies a legislative intent to allow the unwanted injustices to continue over the next four years. The act was effective on June 28, 1985, and if any part of the entire act is to be given effect before 1989, the required exclusionary rule of evidence in court proceedings must be held effective now.

In accordance with Ark. Stat. Ann. § 75-1046.3, law enforcement agencies *are* authorized to use the outdated machines, which require an adjustment by an operator and can give a concealed result, for four years from the effective date of the act. They simply cannot have the result from an outdated machine admitted in evidence. Ark. Stat. Ann. § 75-1046.3 provides:

### Time for Compliance

*All law enforcement agencies* which conduct blood alcohol testing shall be in full compliance with the provisions of this Act [§§ 75-1046.1—75-1046.3] within four years after the effective date [June 28, 1985]. [Acts 1985, No. 533, § 3, p. ___.]

The legislative reasoning has sound basis. The act does not prevent law enforcement agencies from using the outdated machines for screening purposes so that the more costly and intrusive methods such as blood tests would be utilized only when there was a positive result. At the end of the four year period, the use of the outdated machines, even for that limited purpose, would not be permitted by the statute.

The majority, in an attempt to shore-up the opinion, state that the four year delay is to give the State Board of Health time to adopt rules and regulations. The obvious response is that four years are not necessary to draft a regulation and, more importantly, the State Board of Health does not make regulations to implement an exclusionary rule of evidence.

I regret that I am unable to convince the majority of the error in their interpretation of the act.

PURTLE, J., joins in this dissent.