(59 P.3d 1045)
No. 88,154

STATE OF KANSAS, *ex rel.* RILEY COUNTY POLICE DEPARTMENT, *Appellant,* v. $1,489.00 U.S. CURRENCY, CYCLOP-1 NIGHT VISION DEVICE, FOOD SAVER COMPACT II, *Appellee.*

Opinion filed December 27, 2002.

*Brenda M. Jordan,* assistant county attorney, *William E. Kennedy, III,* county attorney, and *Carla J. Stovall,* attorney general, for appellant.

*Richard Lundquist,* pro se.

Before BEIER, P.J., PIERRON, J., and PADDOCK, S.J.

BEIER, J.: The State appeals the district court's decision to return cash and a night vision device to a criminal defendant rather than forfeit them as substituted assets.

The defendant, Richard Lundquist, was convicted of multiple drug offenses. Both controlled substances and drug paraphernalia had been discovered in a search of his residence. The State filed a petition for forfeiture of a Cyclop-I night vision scope found in the bedroom and $1,489 in cash found with methamphetamine in Lundquist's pockets.

The State proceeded under alternative theories at the forfeiture hearing: (1) The items were subject to forfeiture as substituted assets under K.S.A. 60-4115(a)(7), in place of Lundquist's residence, which was exempt; or (2) the items were found in close proximity to the seized drugs, giving rise to a rebuttable presumption that they were forfeitable under K.S.A. 60-4112(j).

At the hearing, the sergeant who conducted the search explained that he seized the night vision device because he knew from experience that drug distributors often used such devices to know what was going on around them in the dark. Also, given the nature

of drugs and paraphernalia found throughout the house, the sergeant identified the residence as one used for drug distribution.

Lundquist appeared pro se at the hearing. He submitted a bank statement showing a deposit of a credit card check for $3,500 and a withdrawal of $2,000 in cash 2 weeks before the $1,489 was seized from his pockets. Also, Lundquist said he was a photographer, and he submitted instructions for a separate device used to attach the night vision scope to a camera.

The following exchange between the district judge and prosecutor ensued:

"THE COURT: The property seized by the police department is subject to forfeiture pursuant to the substituted assets and supplemental remedies of 60-4115 because the home would have been subject to forfeiture had it not been a homestead. 60-4112 (k) provides that the seizing agency must establish that the person is engaged in conduct giving rise to forfeiture. That has been done. That the property was acquired by the person during that period of time of conduct giving rise to forfeiture or within a reasonable time after the period. I don't know that that's been met. And that there was no likely source of the property other than the conduct giving rise to the forfeiture. With regard to the money, Defendant's 7 shows that — and I have no reason to disbelieve the claimant's testimony — that there was a source for the money that was in his jeans and I'll deny the request for forfeiture on the money and order that returned to him. With regard to the night scope, his story about the uses as a camera is as every bit believable as Sergeant Fink's speculation that he's paranoid. I'll restore the night scope. . . .

"MS. JORDAN: Your Honor, might I ask how you can state in one finding that it's subject to forfeiture under substituted assets —

"THE COURT: Because you've got to — you've got to jump through those hoops of the rebuttable presumption in order to accept it under the substituted assets section.

"MS. JORDAN: Your Honor, my reading and I believe the case law supports the reading that the substituted assets finding is sufficient. The other are just rebuttable presumptions that can be utilized as mechanisms to establish the fact that it is subject to forfeiture.

"THE COURT: Take it up on appeal, Ms. Jordan. I've made my ruling. Get your money back and your night vision scope back."

The State has now followed the district judge's advice. It argues in this proceeding that the district judge erred by declaring the cash and night vision device subject to forfeiture as substituted assets under K.S.A. 60-4115(a)(7) and then ordering them returned to Lundquist under K.S.A. 60-4112(k).

The resolution of this issue of first impression requires statutory interpretation, which gives this court unlimited review. The fundamental rule of statutory construction is that the intent of the legislature governs if it can be ascertained, and the legislature is presumed to have expressed that intent through the language of the statute. This court gives effect to an entire act and as far as practicable reconciles different provisions to make them consistent, harmonious, and sensible. *Moore v. Bird Engineering*, 273 Kan. 2, 9-10, 41 P.3d 755 (2002).

In essence, the district judge attempted to marry statutory provisions that the legislature may have designed to remain single. The first and second provisions can be found in K.S.A. 60-4112, which provides in relevant part:

"(j) The fact that money, negotiable instruments, precious metals, communication devices, and weapons were found in close proximity to contraband or an instrumentality of conduct giving rise to forfeiture shall give rise to the rebuttable presumption, in the manner provided in subsection (a) of K.S.A. 60-414, and amendments thereto, that such item was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate the conduct.

"(k) There shall be a rebuttable presumption in the manner provided in subsection (a) K.S.A. 60-414, and amendments thereto, that any property of a person is subject to forfeiture under this act if the seizing agency establishes, by the standard of proof applicable to that proceeding, all of the following:
(1) The person has engaged in conduct giving rise to forfeiture;
(2) the property was acquired by the person during that period of conduct giving rise to forfeiture or within a reasonable time after the period; and
(3) there was no likely source for the property other than the conduct giving rise to forfeiture."

Subsections (j) and (k) of K.S.A. 60-4112 set out two ways in which a rebuttable presumption of forfeiture eligibility can arise. Under (j), a presumption that the item constitutes proceeds of the crime or was used or intended to be used to facilitate the crime arises if the item is found in proximity to contraband or an instrumentality of the crime. Under (k), a rebuttable presumption will arise regarding *any* item of a defendant's property if it can be shown that the defendant's ownership of the item was enabled by and roughly contemporaneous with the criminal conduct.

On the other hand, K.S.A. 60-4115 has nothing to say about when and how a rebuttable presumption of forfeiture eligibility arises as to a particular item of property. Instead, its subsection (a) speaks to the circumstances under which a court may substitute otherwise nonforfeitable property for forfeitable property:

"(a) The court shall order the forfeiture of any other property of an owner or *in personam* defendant, up to the value of that owner's or defendant's property found by the court to be subject to forfeiture under this act if any of the owner's or defendant's forfeitable property:
(1) Cannot be located;
(2) has been transferred or conveyed to, sold to, or deposited with a third party;
(3) is beyond the jurisdiction of the court;
(4) has been substantially diminished in value while not in the actual physical custody of the court, the seizing agency, the plaintiff's attorney, or their designee;
(5) has been commingled with other property that cannot be divided without difficulty;
(6) is subject to any interest of another person which interest is exempt from forfeiture under this act; or
(7) is exempt from forfeiture due to a constitutional or statutory provision."

The plain language, as well as the evident design of this statutory scheme, leads us to conclude that K.S.A. 60-4115(a) has no applicability until some item of defendant's property has already been determined to be forfeitable under 60-4112(j) or (k) or some other statutory provision. If that has occurred, and yet the court is prevented from seizing the item because of one of the circumstances listed in 60-4115(a)(1) through (7), then the court "shall" forfeit substituted property up to a comparable value under K.S.A. 60-4115(a). The statutory provisions governing when an item of property is forfeitable because of its relationship to the criminal activity operate independently of the substitution provision.

In this case, under 60-4115(a)(7), regardless of whether the cash or night vision scope would have been forfeitable in its own right under 60-4112(j) or (k) or some other provision, the district judge was required to forfeit them as substituted property in partial satisfaction of the frustrated seizure of Lundquist's forfeitable but exempt residence.

Our decision is further supported by analogous precedents from the federal courts and the Arkansas Supreme Court.

In *United States v. Bornfield*, 145 F.3d 1123, 1139 (10th Cir. 1998), the Tenth Circuit vacated a lower court order relying on both forfeitability and substitution to seize assets:

"An asset cannot logically be both forfeitable and a substitute asset. To allow such an anomaly would render the substitute assets provision meaningless. Assets involved in or traceable to the offense are forfeitable once the requisite nexus is established. See 18 U.S.C. § 982(a). The substitute assets provision allows the forfeiture of other assets not already forfeitable when the forfeitable asset is unavailable due to some act or omission of the defendant. See 21 U.S.C. § 853(p); *United States v. Ripinsky*, 20 F.3d 359, 365 n. 8 (9th Cir.1994) (§ 982 ... defines forfeitable assets to be only those associated with the underlying offense or traceable to the offense and distinguishes between "forfeitable" and "substitute" assets.')."

See also *United States v. Lester*, 85 F.3d 1409, 1415 (9th Cir. 1996) (only property unconnected to criminal activity subject to forfeiture as substituted asset); *United States v. Berg*, 998 F. Supp. 395, 398 (S.D.N.Y. 1998) (holding pretrial order restraining substitute assets permissible even if assets not product of charged offenses).

The Arkansas Supreme Court interpreted its substitution statute to permit forfeiture of "any other property," even though they were not connected to the underlying crime, when the forfeitable assets used in the underlying crime were unreachable. See *State v. Gray*, 322 Ark. 301, 305-06, 908 S.W.2d 642 (1995).

A Kansas district court's obligation to seize an item of a defendant's property under K.S.A. 60-4115(a) is not dependent upon a showing that the item is somehow related to the criminal activity. Quite the opposite. By its very nature, substituted property under 60-4115(a) is otherwise nonforfeitable property taken in place of forfeitable property somehow placed outside the court's grasp. It mattered not in this case that Lundquist could argue that at least one of the items was not found in proximity to contraband or another instrumentality of his criminal behavior or that he could demonstrate an alternate source of or use for either item. Neither the $1,489 nor the night vision scope needed to be forfeitable in and

of itself. Each could be seized as a substitute for the residence, an exempt instrumentality of Lundquist's illegal drug distribution.

Reversed and remanded for further proceedings consistent with this opinion.